The last case for argument is 16-2439, 11 Engineering v. Microsoft. Let me just tell you at the outset that this has more to do with Mr. Thornburg, but we should have it all straight. There's a cross-appeal in this case on indefiniteness, and you've indiced your time to reflect a cross-appeal. It's the panel's consideration that this issue, because it was raised as an affirmative defense and not as a counterclaim, was really better or appropriately an alternative basis for affirmance rather than a cross-appeal. So given that consideration, I don't think it matters much, but we're going to keep your time as the 15 minutes, and you're free to raise your alternative defense in that timeframe, but there won't be a back-and-forth on the cross-appeal. You understand? All right. Mr. Hong, whenever you're ready. I thought we'd never get to you. May it please the Court. Brian Hong for plaintiffs' appellants, 11 Engineering, Inc., 11 Engineering v. Game Control. Your Honors, the district court's construction of turnoff is erroneous and should be reversed because cutting all power to the radio transceivers is erroneous for three reasons. One, it's merely the district court's personal connotation of the term turning off. Two, it renders the invention inoperable. And three, it's contrary to the intrinsic and extrinsic records. The issue here really is whether turning off the radio transceivers necessarily requires cutting all of the power. And again, the claim to mention does not require and will not work if you cut all the power to the radio transceivers. If you look at the district court's memorandum of opinion, turning off as meaning a state of no power is erroneous because it's merely based on the court's personal connotation. That sort of troubles me that you would use that phrasing. I mean, the reality is that at some point, language is language, and judges who are reviewing claim constructions have got to give language its plain and ordinary meaning if on its face it has a plain and ordinary meaning. I mean, so to begin with the proposition that turning off is different than turning down, I don't think means that he's being somehow flip in his approach to this. I understand, Your Honor. I guess our concern is looking specifically at the memorandum of opinion when he finds this amendment from power down to turn off as somehow surrendering a subject matter, and the memorandum of opinion says, well, power down might imply one or more settings between on and off, and cites nothing for that statement, and then says, but turning off more strongly connotes a state of no power, and also cites nothing for that statement. Well, turning off means turning off. There's no reference of turning off in the specification right, so there's no indication that the patentee has not drawn us to any indication that turning off means something other than turning off, right? Correct, Your Honor. And the fact that in the prosecution history, even though there's no information about what exactly was done or why, you know, we construe statutes around here quite frequently, too, when they had one use, one term, and they changed it to another term, that at least connotes or strongly suggests that there's a difference between the two terms, because why would one go through unnecessary exercise in changing those? So if that's where we left, and just you mentioned the inoperability, but I think there's a serious factual dispute between the parties and the experts as to the inoperability, so we can look at the bigger picture of where your strength is in suggesting that turning off means something other than what the district court said. Yes, Your Honor, I guess to your first point there, that turn off does not appear in the specification, that's what I was saying correct to, but I think there are indications in the specification as to what turn off means. Low power consumption is an expressed characteristic of the invention in the abstract, as well as column 12, lines 44 to 52. Adjusting power levels is also expressly taught. This is column 9, line 66, and column 10, line 5, and column 10, line 17. Is that with respect to the transceiver? That is with respect to... In terms of this powering down, turning off notion, or I thought it was about something else. It is with respect to turning off, Your Honor, because that portion of the specification is with respect to poll and response packets, and when you look at the claim language here, it's using synchronous time domain multiplexing to turn off the radio transceiver, and synchronous time domain multiplexing involves using poll and response packets. Those poll and response packets at those portions of the specification include information about adjusting power levels, so it's using those poll and response packets. Maybe I'm misremembering. I thought the discussion about power in the specification was really focused on when you're transmitting data, and not when you're not transmitting data, and then according to the claim, you want to somehow turn off the transceiver. Do you understand the distinction I'm making? I do, and I understand that's the argument that Microsoft has made, but Microsoft is pointing to the very same portions of the specification that 11 Engineering is, and we see nothing in those particular portions of the specification that limit the power level adjustment. Where do you say in the spec that this different power levels does relate to the transceivers? You're just saying it doesn't say it doesn't, so that you don't have to say that it does? We're saying that it does expressly relate to both the receiver and the transmitter in that portion of the spec, talking about the bottom of column 9 into the top of column 10. I think the question was whether or not this power level adjustment is limited to actually when the receivers are receiving or transmitting, or is it also a power level adjustment for some time in between? We see nothing in this portion of the specification that limits that power level adjustment solely to the receiving and transmitting. It does, turning back to the claim language, speak specifically to using synchronous time doing multiplexing to turn off the transceiver, and these pull and response packets are specifically towards using synchronous time doing multiplexing. Again, when we look at the District Court's opinion as relying on this amendment from power down to turn off, I understand Judge Prost was saying, how would we explain that you would make such an amendment? First of all, I think it's important to look at the amendment from power down to turn off as part of a wholesale rewrite of the claim, so it wasn't apparent that these particular words were changed for any apparent reason. There's certainly no support in that amendment that the word power down... Are you saying it's meaningless, though? We are saying... Even if we accept the proposition that there's not a clear and unmistakable disclaimer, it is an amendment of language which would at least indicate that there's a difference between the two. We don't agree, Your Honor, and there's a very good reason for that, and that is if you look at the arguments that were made in support of both amendments, there's a regular amendment and then from power down to turn off, the turn off language showed up in a supplemental amendment, and looking at when that supplemental amendment was made on appendix page 594, the applicant said, well, in view of the revised new claims and the arguments presented in the amendment of February 2003, so it's relying on its new claim language and on the very same arguments it made for the first amendment, and so if we look at those arguments, wouldn't those arguments change if the claim language meant something different? We think it would, and instead the very same... Why would you change language if there's not meant to be a distinction? It's a little bit difficult to tell from the record. Can't we make certain assumptions when language changes, as Judge O'Malley said, not in terms of what it necessarily means, because we don't have much on that, at least in that section of the prosecution history, but at least that there's a distinction between the two terms? I think we cannot make the standard of reaching the standard of a clear and unmistakable disavowal here, and that's what the cases say, and when we look at the district court's opinion... Well, no, that clear and unmistakable disavowal comes up when you start with the assumption that there's a plain and ordinary meaning to the claim term, and then you're trying to curb that or cabin that or do whatever, so you might need a clear... But here, turning off, at least the better meaning one could say, is it means turning off, right? Cutting off power. I guess another way to ask the question is, can you explain why the patent attorney chose to delete, power down, and in exchange for that deletion, add in turning off? What do you think was in the patent drafter's mind when he did that? If you look at the claim as a whole in that amendment, I guess I'll answer it in two ways. First of all, looking at the entire claim language or the structure of the claim, the claim is very unconventional looking, and I think every claim element started with the word where, where the transceivers do this and where this does this, and it looked a little bit strange to me, and so there wasn't this rewrite of the kind of structure of the claim, but then when we look at the arguments, particularly on appendix page 582, those arguments say that the invention conserves power, that it achieves low power consumption, and those very same arguments are made in support of both forms of the language, then I think the only indication that we have, the only express indication from the record, is that they don't have a meaningful difference. So I guess your best answer is the patent drafter changed it, but there's really no reason why he did it. We have no real clue why he did that. We don't. You'd agree, would you not, that this particular claim is about power level changes when no data is being received, right? That's correct. I think it's using synchronous time domain multiplexing to turn off when the transceivers are not receiving or transmitting data. Okay, so your column 9 and column 10 citation to us, in that section, what it is talking about is power level information being transmitted in a packet. So by definition, it is a circumstance in which information is being transmitted. So isn't that separate and apart from what this claim is all about? It's correct that that information isn't contained in a packet that is being transmitted, but the information is being sent to the receiving transceiver in order to tell that receiving transmitter what kinds of transmission and receiving power levels to use. And so there's nothing in that portion of the spec to tell that actually says or limits that dynamic power level adjustment to what that receiving transceiver does to when it's receiving. All right, well then, is there any portion of the spec that affirmatively supports your position that powering down is what we should understand for purposes of this claim where information is not being transmitted? Well, we think the overall expressed characteristic of the invention in the abstract, the low power consumption is an expressed characteristic in column 12, lines 44 through 52. These power level adjustments are in line 17 through 23, as well as there is a section on perceived strength signal indicator, column 6, lines 1 through 15. And this also talks about power level adjustment. And we're citing these here at the appellate level because the district court found that there was no expressed support in the specification for some interim lower power consumption or for some interim setting between on and off. And we disagree that the patent expressly teaches low power consumption. I see, unless there's any further questions, I'm well into my rebuttal time. Thank you. May it please the court, I'm John Gornberg from Microsoft. I would like to address briefly the reasons why off really does mean off in this case. And then I would like to respond to a couple of the new arguments that Eleven put in their reply. And then I would like to turn briefly to the alternate ground to affirm. But you would agree, before we get to that last point, that if we were to agree with you on the claim of construction, that your indefinite argument would be moot. If the court affirms the judgment of non-infringement, we would agree that anything about validity would not be necessary to that judgment. Well, it would be moot because there was no declaratory judgment action file. This court has gone both ways, but we would agree that that's within this court's discretion, yes. Okay. So off means off. That's the ordinary meaning. It's what off doesn't mean, reduce power as This is clear from that they knew how to say down rather than off during the prosecution. It's a lot like the Board of Regents of Texas case where the claim language was changed from said to each, you know, simple small words like down and off. But the meaning in that case was found to be important and the meaning here should also be found to be important. Does it matter? Their argument is that it's inoperable under this. Now, I know your position is that that's not correct, and you can tell us why that's not correct. But if it were, would that matter? Would that be dispositive? It would put a heavy burden on us if it were inoperable. There are cases like Chef America saying that if the claim is clear, too bad if it's broken. But it's a high burden and not one that we think we need to shoulder because we think that their arguments for why it's inoperative are both wrong and also waived. Their main new argument and their reply for why the turning off, if you really mean off, would break synchronous time domain multiplexing is because they say, well, that would turn off the clock. And then how would you know whenever to turn it back on? And there's really three problems with that position. One is that it's a new position in their reply. So not only was it not presented to the district court, it wasn't even in their opening brief. So we've never had a chance to respond to it. There's no record. But beyond that, it's just attorney argument. It's not what the patent says. It's not what the prosecution industry says. It's not even what their expert declaration said. If you go back and look in the appendix at page 492 to 93, that's where their expert talks about this claim construction. And he says, sure, he prefers their claim construction. But he never actually says the words, and by the way, if you adopt Microsoft's construction, it breaks the invention. He doesn't say that. You can imagine that 11 pushed him as hard as they could have to get him to say as much as he would. And he never says, you know, it's inoperative. Even if it's not inoperative, I mean, the expert did testify that the whole point here was saving power consumption, that you didn't have to turn it off to accomplish that. There are a lot of ways to save power. That's true. But the specific way that's specifically recited in this claim is you save power by turning off when you're not using the transmitter. So you're not turning it off all the time, obviously. You're using power when you're transmitting. But this claim specifically says when you're not using it, when you're not transmitting, when you're not receiving, turn it off. It's like turn off the lights when you leave the room. That's basically what this claim says. And yes, there's other ways to save power. But this is the way that they chose to claim. What about the television example or a clock radio? If I turn off my clock radio or turn off my TV, there's still power running to the TV. There's still power running to the clock radio. And, Your Honor, that's an example that Eleven put in their brief that's also not considered by the experts and not on the record. But I would submit that when you turn off your TV, that you, in fact, have turned off the screen. You've turned off the part of the TV that receives TV signals from the air or from the cable. And so you've turned it off as much as you as the consumer can turn it off. Yes, we all know as users of televisions that there are parts of the TV that are still on. Most notably, the front panel has to still be on because it can receive your next remote control command. You can push the on button. And so some part of the TV did have to be on in order to receive. So haven't I lowered the power consumption but not completely cut off power to the TV? And that's why we have to be really careful about what this claim says gets turned off. It doesn't say the whole device gets turned off. It doesn't say that the game console gets turned off. It doesn't even say that the entire RF module gets turned off. What it says is the radio transceiver gets turned off. And so that's very narrow and very specific. And so to an engineer in this field, they would understand that that specific thing is the component that is getting turned off, not the entire device. The entire transceiver is, and everything that's inside the transceiver. Yes, but the transceiver is just the radio. Doesn't the transceiver include, I don't know, an RF module and then some kind of processor or something like that? So I think it's the other way around in the specification. The RF module is the larger unit. It's 22 and 24 in the spec. And the claim says that part of the RF module is figure 10. So combining figure 1 and figure 10, we would find that there's an RF module that includes a lot of circuitry. Within that RF module is figure 10, which Microsoft argued figure 10 is the radio transceiver. The district court found that maybe not all the stuff in figure 10 is necessarily part of a radio transceiver. There may be other circuits in there. And 11 argued that back to the district court. And, for example, if you look at Appendix 472, 11 specifically argued to the district court that not all of the components of figure 10 are part of a radio transceiver. And the district court agreed, and you can see that at Appendix 15. And so the district court found that a radio transceiver is just circuitry for sending and receiving. And so maybe it's not all of figure 10. And certainly it doesn't have to be the circuit that turns the radio on and off. And so this is the main reason why they're wrong on the inoperability is that the thing that turns the radio on and off doesn't have to be the radio itself. So you don't turn off the switch. You just turn off the radio. And then the timer can be running in the switch that turns the radio back on at the right time. When it comes to claim construction principles, do you think there's a one-size-fits-all rubric in the sense that, OK, we see some disputed language or disputed term in a claim. And now before we do anything, we have to look at the words in the claim themselves, look maybe at the other claims, look at the specification, look at the prosecution history, and then conclude after drawing from all those intrinsic sources, can we arrive at a clear meaning of the claim? Or are there other instances where there's words in a claim and they seem pretty basic? And so maybe you just start from a premise of there's a very commonly understood, well-established default meaning. And now we need to go look through the spec, prosecution history, et cetera, to see if there's anything in those sources that displace that common default meaning. Is there a one-size-fits-all or are there certain circumstances where you do one and certain circumstances where you do the other? What's your understanding? So my understanding is that there are actually, I think, two lines of cases right now in this court that tend to emphasize the read the entire intrinsic record to come to a meaning. And then there's some other cases saying you can start from ordinary meaning. And unless there's a clear disavowal, you go with the ordinary meaning. I think there's both types of cases. I think Phillips tells us that we should start with the entire intrinsic record, that you can't divorce the claims from the entire intrinsic record. And so even if you don't have a disavowal, and we're not arguing that there is a disavowal here or needs to be. If we were arguing that off means on, well, then we'd better have a disavowal. But since we're saying off means off, we think that you do need to read the entire spec. You need to read the entire prosecution and come to a conclusion about what the intrinsic record means as a whole. And we think that's exactly what Judge Stark did here in addition to looking at the ordinary meaning of a word like off that everyone really does understand. It's like said and each and on and off. These are common words. But it's really hard in English to change their meaning without something that would be really super clear in the intrinsic record. So to answer your Honor's question, I think there are cases going both ways. But I think in this case, the two methodologies are congruent and reach the same conclusion. That if you start with off means off and then look at the intrinsic record to see if it confirms it, the answer is yes. If you start with the intrinsic record and see that they change down to off, well, if you start in that direction, you reach the same result. When you start with off means off, do you think that basically means you're starting with extrinsic evidence? Because you look at a dictionary and you know it confirms in further elaboration what inside your head off means. And so now you've run to a dictionary definition first. And then after that, go consult the intrinsic evidence. And is that, therefore, then a backwards kind of analysis? No, Your Honor. I don't think you should start with dictionaries. I think Phillips pretty clearly said we should not do that. So I think that nonetheless, what the panel mentioned during counsel's earlier argument is that even without running to dictionaries, as speakers of this language, we do come to claim language with an understanding of what the words mean. And the court has that understanding, and there's nothing wrong with that. We can't start pretending like we don't speak English. But it's not to say that dictionaries are paramount. We're not advocating that we go back to that era at all. That you have to read the entire record and come to a judgment as to what this word means. So just briefly to return to the specification questions that the panel raised, we agree very strongly that the quotations in columns 9 to 10 and 5 to 6, that 11 cites are talking about changing power levels during transmit and receive. That's apparent from the language itself. For example, column 6 says dynamically adjust power levels of transmitting devices. That's at about line 9. Column 10 says transmit and receive power levels at about line 4. So the specification is certainly never, ever suggesting that when the devices are not transmitting and not receiving, that off means something other than off. There's no hint of that at all in the specification. We also want to respond to Levin's reply where they said the district court got it wrong, that the specification doesn't disclose multiple power levels. That's not at all what Judge Stark said. If you look at appendix 14, he simply said there was no intrinsic support for the idea that turning off means lower power consumption. He never says one way or the other whether there's lower power consumption for other purposes. He just says there's nothing in the spec that says turn off means that. He says whereas power down might imply one or more interim settings between on and off. Yes. Okay. Then he goes on to say that there's nothing in the record. So this is appendix 14 about line 4. The record is devoid of intrinsic evidence to support the view that a person of ordinary skill in the art would have understood the claims to be using the words saving power by emphasized turning off to include methods of saving power other than simply shutting it off. So that's what he said. He doesn't make any finding that the specification doesn't talk about reducing power during transmission. He doesn't talk about that. So he didn't make that mistake. Very briefly on the cross appeal, which is the alternate ground to affirm. Again, if the court affirms non-infringement, then this can be considered moot. But the main point that we would want to emphasize is that Eleven added these performance limitations at appendix 568. Used them specifically to distinguish prior art at appendix 582. And it's notable at that appendix 582, they say that the Savota prior art didn't have the low latency. So the performance limitation. They say that what they really meant was, well, he didn't have frequency hopping or synchronous time domain multiplexing. The other limitations. But that's not what they said. At appendix 582, what they say is that he didn't have latency. They don't say anything about frequency hopping or synchronous TDM. And then the low latency was, again, specifically recited by the examiner at appendix 602 in his reasons for allowance. And so we do think that this was a material limitation and should not be in the alternative have been found to be irrelevant.  Thank you. May I please in court? If I could turn quickly to the very last issue that Microsoft argued with respect to the arguments made on appendix 582. We think the applicant did very specifically refer to the frequency hopping and time domain multiplexing limitations there. Because if you look at the top of page 582, it says the ability to reduce system latency. It wasn't just the system latency. And then the applicant referred to claim 19, lines 25 through 69. If you look at claim 19 at lines 25 through 69, you find the frequency hopping and time domain multiplexing limitations. Those are at appendix page 574 to 576. If you go on to the next paragraph, it distinguishes Bowdoin because the invention has means for achieving low latency. In the next paragraph, it distinguishes Sabota for having means for achieving low latency. So it's not just the low latency itself. It's actually the means for achieving it. And here you have A plus B equals C. A plus B is frequency hopping and time domain multiplexing. C is just merely the result. I'd like to address a couple other. Would the result be the lack of any need to retransmit data packets? And then it's really the consequence of no longer having to retransmit data packets that leads to avoiding latency problems or minimizing latency problems. That's correct, Browner. I think earlier in that same claim element, it says avoiding the need to retransmit packets, receiving the first packet intact and avoiding the need to retransmit. So we think that's an objective measure of when you have low latency. And the result, which is just saying what the result or value of the invention is, is the whereby clause. I see my time has run out. Do you have any more questions? No. Thank you. Thank you. We thank both sides in the case to submit. That concludes our proceedings this morning. All rise. The honorable court is adjourned until tomorrow morning. It's at o'clock a.m.